# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI SOUTHERN DIVISION

| | | |
|---|---|---|
| **Vera Williams,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Civil Action Number |
| v. | ) | 11-03083-CV-S-JTM |
| | ) | |
| **Great American Insurance Company,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

On January 1, 2010, plaintiff Vera Williams ("Williams"), a truck driver, was attempting to jack up a trailer using her foot for leverage when she fell and sustained injuries, primarily a lumbar strain, cervical strain, and a hernia. Williams also began experiencing headaches after the accident. At the time of the accident, Williams was insured by defendant Great American Insurance Company ("Great American") under an OCCUPATIONAL ACCIDENT POLICY, Policy No. OA4655634-01 ("the Policy"). Initially, Great American paid benefits under the Policy to Williams, including "Temporary Total Disability" benefits. On April 26, 2010, however, Great American wrote to Williams and notified her that the company would "no longer pay benefits for the injuries sustained in the January 1, 2010 occupational accident as of April 18, 2010."

On September 27, 2010, an attorney representing Williams wrote to Great American and demanded the payment of Williams' medical bills and the reinstatement of Temporary Total Disability payments. Great American refused to reinstate the Temporary Total Disability payments and advised Williams that all outstanding medical bills had been paid. As the Eighth Circuit has observed:

> In Missouri, recovery "by the insured against the insurance company for the policy benefit ... is limited to that provided by the law of contract plus, if section 375.420 applies, the enhancements provided by the statute." "[A]n insurance company's denial of coverage itself is actionable only as a breach of contract and, where appropriate, a claim for vexatious refusal to pay."

*Wood v. Foremost Insurance Co.*, 477 F.3d 1027, 1029 (8th Cir. 2007) (*quoting*, *in part*, *Overcast v. Billings Mutual Insurance Co.*, 11 S.W.3d 62, 68, 69 (Mo. 2000) (*en banc*)). In keeping with Missouri law, Williams subsequently instituted this lawsuit alleging that Great American "breached the insurance contract" that it had with Williams. Further, Williams alleged that Great American had "unfairly, unreasonably, and vexatiously failed and refused to pay" Williams and, as a consequence, she was entitled to penalties and attorneys' fees under MO. REV. STAT. § 375.420. Presently pending before the Court is Great American's motion for summary judgment on both claims [Doc. 15].

The gist of Great American's motion is that, as a matter of law, the cessation of benefits to Williams was in full compliance with the terms and conditions of the Policy. As such, Williams' claim for breach of the insurance contract must fail. Moreover, in the event that Great American did not breach the Policy, it can hardly be held liable for a vexatious refusal to pay.[1] In addressing the merits of Great American's motion and Williams' response, the Court is mindful of several overriding doctrines.

The parties agree that this dispute is governed by Missouri law. In Missouri, "insurance policies are contracts, and the rules of contract construction apply." *Arbeitman v. Monumental Life Insurance Co.*, 878 S.W.2d 915, 916 (Mo. App. [E.D.] 1994). Moreover, under Missouri

---

[1] Under Missouri law, a vexatious refusal to pay claim requires a plaintiff to show: (1) an insurance policy; (2) the insurer's refusal to pay; and (3) refusal without reasonable cause or excuse. Hensley v. Shelter Mutual Insurance Co., 210 S.W.3d 455, 464 (Mo. App. [S.D.] 2007).

2

law, the interpretation of contractual terms is a question of law. *Columbia Mutual Insurance Co. v. Schauf*, 967 S.W.2d 74, 76 (Mo. 1998) (*en banc*). In interpreting an insurance policy, courts must give words "their plain meaning, consistent with the reasonable expectations, objectives, and intent of the parties." *Standard Artificial Limb, Inc. v. Allianz Ins. Co.*, 895 S.W.2d 205, 209 (Mo. App. [E.D.] 1995) (*internal citations omitted*). Summary judgment is an appropriate judicial tool in a breach of contract case where the subject contract is clear and unambiguous in its construction. *West v. Jacobs*, 790 S.W.2d 475, 480 (Mo. App. [W.D.] 1990).

An insurance policy will be found to be ambiguous if it is reasonably open to alternative constructions due to "duplicity, indistinctness, or uncertainty of meaning." *Chase Resorts, Inc. v. Safety Mutual Casualty Corp.*, 869 S.W.2d 145, 150 (Mo. App. [E.D.] 1993). Furthermore, a court should evaluate an insurance policy's language "in the light in which it would normally be understood by the lay person who bought and paid for the policy" in assessing whether it is in fact ambiguous. *Heringer v. American Family Mutual Insurance Co.*, 140 S.W.3d 100, 103 (Mo. App. [W.D.] 2004) (*internal citations omitted*). And "[a]bsent an ambiguity, an insurance policy must be enforced according to its terms." *Lang v. Nationwide Mutual Fire Insurance Co.*, 970 S.W.2d 828, 830 (Mo. App. [E.D.] 1998) (*internal citations omitted*). To that end, "[c]ourts will not create an ambiguity in order to distort the language of an unambiguous insurance policy." *Krombach v. Mayflower Insurance Co., Ltd.*, 827 S.W.2d 208, 210 (Mo.1992) (*en banc*). Finally, "[w]hether the language of an insurance contract is ambiguous is a question of law." *St. Paul Fire and Marine Insurance Co. v. Missouri United School Insurance Council*, 98 F.3d 343, 345 (8th Cir. 1996).

With all of that in mind, the Court turns to the allegations that form the nucleus of the present motion for summary judgment. To a considerable degree, the parties are in agreement on the basic facts.

On March 29, 2010, approximately three months after the accident, Williams was seen for an Independent Medical Examination by Jeff Wooward, M.D. at the request of Great American. Dr. Woodward issued a written report regarding his examination on April 16, 2010, wherein he opined that Williams had a mild cervical strain, a thoracic strain at T5-10, and a lumbar strain/sacrum contusion. Dr. Woodward further opined that these conditions were related to Williams' January 1, 2010 accident. Moreover, Dr. Woodward additionally opined that within a reasonable degree of medical certainty:

> [Williams] may complete any remaining PT [physical therapy] treatment orders in the next one week and will reach MMI [maximum medical improvement] on 4-5-2010. At that time, no further medical tests or treatment is [*sic*] necessary for the above stated work injury conditions.

No summary judgment evidence has been submitted to cast any genuine dispute regarding Dr. Woodward's conclusion that Williams attained maximum medical improvement on April 5, 2010. For instance, Williams' attorney arranged for her to be seen by James T. Shaeffer, M.D. On May 8, 2010, Dr. Shaeffer wrote a report that concluded:

> It is also my opinion that Ms. Williams will probably remain permanently disabled for her previous work as a truck driver, which does involve heavy use of her back including lifting and as I noted above I do not think that there is any sort of interventional treatment that would make a difference in her condition at this time.[2]

---

[2] Dr. Shaeffer made a comment that that he does not believe that Williams' "prognosis is good." However, the observation was made when Dr. Shaeffer was considering Williams' problems from her accident in combination with "her comorbidities of hypertension, emphysema, and apparently by history osteoarthritis." The Court does not view Dr. Shaeffer's prognosis statement given her overall health condition to be probative evidence that Williams had not reached maximum medical improvement on April 5, 2010 as opined by Dr. Woodward.

4

When Great American wrote to Williams on April 26, 2010, to suspend her receipt of Temporary Total Disability benefits, the company noted that "since [Williams had] reached MMI and [was] no longer receiving or requir[ing] continuous care, [Williams was] not eligible for Temporary Total Disability benefits." To the extent that Great American suspended such benefits because Williams had reached maximum medical improvement, it was wrong. Certainly, if this were a case governed by the Missouri Worker's Compensation Act, Great American's decision to terminate the payment of Temporary Total Disability benefits to Williams would have been justified. Construing that law, Missouri courts have determined:

> The purpose of temporary total disability benefits is to cover the employee's healing period, so the award should cover only the time before the employee can return to work. <u>Temporary total disability benefits are owed until the employee can find employment or the condition has reached the point of maximum medical progress</u>. Thus, temporary total disability benefits are not intended to encompass disability after the condition has reached the point where further progress is not expected.

*Cardwell v. Treasurer of State of Missouri*, 249 S.W.3d 902, 909 (Mo. App. [E.D.] 2008) (*citations omitted*) (*emphasis added*). This case, though, is governed by the terms in the Policy.

In that regard, the Policy contains a section denominated "Temporary Total Disability Benefit." In that section, it is explained that:

> The Temporary Total Disability Benefit shall cease on the earliest of the following:
>
> 1. the date the Insured Person is no longer Temporarily Totally Disabled;
>
> 2. the date the Insured Person dies;
>
> 3. the date the Insured Person attains age 70; or
>
> 4. the date the Maximum Benefit Period shown in the Schedule has been reached.

5

Only the first condition is at issue here. With regard the term "Temporarily Totally Disabled," the Policy requires two conditions to be met:

> (1)  the disability "prevents an Insured Person from performing the duties of his or her regular, primary occupation," and
>
> (2)  the disability "requires and results in the Insured Person's receiving Continuing Care."

For purposes of the present summary judgment motion, only the second condition is at issue. "Continuous care" is defined to mean "medical monitoring and/or evaluation of the disabling condition by a Physician on a monthly or more frequent basis." Thus, pursuant to the terms of the Policy, Great American could terminate Williams' receipt of Temporary Total Disability benefits if (1) her disability did not require or result in her receiving "medical monitoring by a physician on a monthly or more frequent basis" and/or (2) her disability did not require or result in her receiving an "evaluation" of her disabling condition by a physician on a monthly or more frequent basis."

Neither "medical monitoring" nor "evaluation of the disabling condition" is further defined in the Policy. In that regard, "[w]hen construing an insurance policy, [a court] must give the words their plain meaning, consistent with the reasonable expectations, objectives, and intent of the parties." *Schenewerk v. Mid-Century Insurance Co.*, 263 S.W.3d 660, 663 (Mo. App. [E.D.] 2008). It is self-evident that neither the term "monitoring" nor the term "evaluation" needs to rise to the level of active medical "treatment." Instead, both words plainly suggest the inclusion of far more passive involvement by a physician – including as limited a role as mere oversight to ensure that the disabling condition does not worsen, that the patient's medication regimen does not need adjustment, and/or the ongoing consideration regarding the possible interaction of the disabling condition with other health concerns in the patient.

Williams asserts in response to the motion for summary judgment that she has received and is still receiving "Continuous Care" for her disability and, thus, her benefits should not have been stopped. As evidentiary support her argument, Williams cites to her deposition testimony that indicates that she was prescribed hydrocodone[3] initially and, later, Tramadol[4] by her doctors for her pain arising from her disability. According to Williams, at one point, her treating doctor [Yung Hwang, M.D.] changed her pain medication "because he said that [Williams] was taking too much of the [hydrocodone.]." In response to Williams' argument, Great American asserts:

> [Williams'] primary care physician writing prescriptions for pain
> medication is not the type of medical monitoring and/or evaluation
> of the disabling condition anticipated by the Policy.

Great American, however, does explain what is "anticipated" by the Policy.

The Court concludes that based on the language employed by Great American in drafting the Policy, this is exactly the situation "anticipated" by the Policy. Great American did not tie the termination of Temporary Total Disability benefits to an insured reaching maximum medical improvement (as occurs in workers' compensation). Instead, Great American tied the

---

[3] Hydrocodone "is used to relieve moderate to severe pain," "is in a class of medications called opiate (narcotic) analgesics," "is a controlled substance," and "relieves pain by changing the way the brain and nervous system respond to pain." *MedLine Plus [Hydrocodone]*, National Institutes of Health, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601006.html.

[4] Tramadol "is used to relieve moderate to moderately severe pain, "is in a class of medications called opiate agonists," "works by changing the way the body senses pain," and:

> If [individuals] suddenly stop taking tramadol [they] may
> experience withdrawal symptoms such as nervousness; panic;
> sweating; difficulty falling asleep or staying asleep; runny nose,
> sneezing, or cough; numbness, pain, burning, or tingling in [their]
> hands or feet; hair standing on end; chills; nausea; uncontrollable
> shaking of a part of [their] body; diarrhea; or rarely, hallucinations
> (seeing things or hearing voices that do not exist).

*MedLine Plus [Tramadol]*, National Institutes of Health, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a695011.html.

termination of Temporary Total Disability benefits to an insured no longer receiving "Continuous Care." However, Great American did not define Continuous Care as active treatment, but instead used the broader terms of "monitoring" and "evaluation." The Court finds that an insured being required to routinely take serious and substantial doctor-prescribed medications as a result of a disability can – in appropriate cases – constitute monitoring and evaluation amounting to Continuous Care under the Policy. The issue here is whether Williams' summary judgment evidence is sufficient to create a factual dispute as to whether she is one of those appropriate cases.

The Court believes this is a close question. In approaching the issue, the Court bears in mind the rules regarding the application of summary judgment:

> A court considering a motion for summary judgment must view all facts in the light most favorable to the non-moving party and give to the non-moving party the benefit of all reasonable inferences that can be drawn from the facts. While a party is entitled to summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law, summary judgment is inappropriate when the record permits reasonable minds to draw conflicting inferences about a material fact.

*Riedl v. General American Life Insurance Co.*, 248 F.3d 753, 756 (8th Cir. 2001). Viewing the facts (with support in the record) regarding Continuous Care in the light most favorable to Williams, it is established that she has received (and is still taking) pain medication, the medication is related to her disability arising from the January 1 accident, the pain medication is being prescribed by physicians, demand for payment for these prescriptions has been made on multiple occasions to Great American, and, at least once, her doctor has changed her prescription because of her over usage. It further seems reasonable to infer that:

(1) Pain medications (and, indeed nearly all medications) pose risks of side-effects that must be carefully considered by physicians prescribing (and renewing prescriptions for) such medication;

(2) Williams' physicians are actively and continually monitoring and evaluating her use of pain medication on a regular basis (and at least as frequently as new prescriptions are issued); and

(3) Pain, if left untreated, can lead to residual health issues.

The Court concludes that Williams' summary judgment evidence is sufficient to create a factual dispute as to whether she has received and is continuing to receive Continuous Care as defined in the Policy. Accordingly, the Court denies Great American's motion for summary judgment insofar as it seeks a judgment on Williams' breach of contract claim.

As previously noted, in the COMPLAINT, Williams also asserts a claim against Great American for vexatious refusal to pay, seeking penalties and attorneys' fees under Missouri law. The particular statute provides:

> In any action against any insurance company to recover the amount of any loss under a policy of automobile, fire, cyclone, lightning, life, health, accident, employers' liability, burglary, theft, embezzlement, fidelity, indemnity, marine or other insurance except automobile liability insurance, <u>if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse</u>, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict.

MO. REV. STAT. § 375.420 (*emphasis added*). Initially, the Court should note that the finding, *supra*, that summary judgment is not appropriate on the breach of contract claim does not foreclose an entry of summary judgment on a vexatious refusal to pay claim in the same litigation.

> The mere fact that a judgment determines insurance coverage adverse to the position taken by the insurer is not sufficient in itself to award damages for vexatious delay.

*Boatmen's First National Bank of Kansas City v. Hawkeye-Security Insurance Co.*, 861 S.W.2d 600, 603 (Mo. App. [W.D.] 1993). *See also Wunsch v. Sun Life Assurance Co. of Canada*, 92 S.W.3d 146, 154 (Mo. App. [W.D.] 2002) ("[t]he test for a vexatious refusal claim is not the final resolution of the coverage issues but how willful and unreasonable the insurer's refusal was as the facts appeared to a reasonable and prudent person at the time the insurer was asked for coverage.").

The Court concludes that Williams has not produced sufficient evidence to create a genuine issue of material fact on the willfulness of Great American's suspension of her benefits. Williams argues that the refusal was vexatious in that Great American terminated her receipt of Temporary Total Disability benefits by stating that "since [Williams had] reached MMI and [was] no longer receiving or requir[ing] continuous care, [Williams was] not eligible for Temporary Total Disability benefits." Williams argues that maximum medical improvement is not a consideration for suspension of Temporary Total Disability benefits under the Policy. The Court agrees and, had Great American based its decision entirely on that ground, the Court would agree that a jury issue as to willfulness was presented. However, Great American's letter further stated that the benefits are being discontinued because Williams was no longer receiving or requiring continuous care. As set out previously, given the definitions in the Policy, this was a close and difficult question. Williams has failed to offer summary judgment evidence to establish a dispute as to whether Great American's termination decision – even if ultimately contrary to the Policy – was "without reasonable cause or excuse."

10

Case 6:11-cv-03083-JTM   Document 22   Filed 10/19/12   Page 10 of 12

In making this summary judgment ruling on the vexatious refusal to pay allegation, the Court rejects Williams' argument that the RIDER APPLICABLE TO RESIDENTS OF MISSOURI ("the Rider") applies to Temporary Total Disability benefits payable under the Policy. The Rider provides the following modification to the Policy:

> Continuous Total Disability[5]
> (a) In no event will the minimum monthly benefits be less than $50.
> (b) Any provision requiring the Covered person to be under a Physician's care while disabled will not apply once the Covered Person has reached the maximum point of recovery from that accident.

Williams argues that this modification should be applied to Temporary Total Disability benefits and, consequently, Great American had no basis to require any showing of Continuous Care in terminating her benefits. The Rider, however, plainly and explicitly states that the modification eliminating a showing of Continuous Care in cases where a person has reached maximum medical improvement applies only to <u>Continuous</u> Total Disability. The Court cannot and will not create an ambiguity where none exists in the plain language employed by Great American. The Rider does not create a genuine issue of fact regarding the willfulness of Great American in terminating Williams' receipt of Temporary Total Disability benefits.

For the foregoing reasons, it is

---

[5] Under the Policy, Continuous Total Disability is payable to an individual after they have received the maximum payout of Temporary Total Disability benefits (and meet some additional conditions). Although the Policy employs the nomenclature "Temporary" and "Continuous," it seems the more appropriate terms might have been "Short Term" and "Long Term."

11

**ORDERED** that *Defendant Great American Insurance Company's Motion For Summary Judgment*, filed July 16, 2012 [Doc. 15] is **GRANTED IN PART AND DENIED IN PART**. Accordingly, summary judgment is granted in favor of Great American on the claim for vexatious refusal to pay, but denied on the claim for breach of contract.

    */s/ John T. Maughmer*
    **John T. Maughmer**
    **United States Magistrate Judge**